**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 1:25-cv-25933**

GUILLERMO GOILO, on behalf of himself
and all other similarly situated,

Plaintiff,

v.

VIP SECURITY FLORIDA, LLC, a Florida
Limited Liability Company, LUIS BELFORT,
an individual, and DANIEL VAINBERG, an
individual,

Defendants.
_______________________________________/

# FIRST AMENDED COMPLAINT

1. Plaintiff, Guillermo Goilo ("Plaintiff" or "Mr. Goilo") brings this collective action under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.,* ("FLSA") for wage and labor violations arising out of Defendants', VIP Security Florida, LLC ("VIP"), Luis Belfort, and Daniel Vainberg ("Defendants") intentional misclassification of Plaintiff as an Independent Contractor and unpaid overtime wages in violation of the FLSA.

2. This action is brought by Plaintiff to recover compensation for the Defendants' unpaid overtime violations, as well as an additional amount as liquidated damages, costs, and reasonable attorney's fees under the provisions of 29 U.S.C. § 201 *et seq*., and specifically under the provision of 29 U.S.C. § 207.

3. Plaintiff also brings this action under the FLSA's anti-retaliation provisions and Plaintiff seeks damages within the Court's jurisdictional requirements, reasonable attorney's fees and costs, and all other remedies allowable by law.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the FLSA claims pursuant to 28 U.S.C. §1331, and 29 U.S.C. 201 *et. seq*.

5. Venue is proper in this Court because Defendants have a security business in Miami-Dade County, Florida and conducts business in Miami-Dade County, where this Court sits, and because the events, acts, and omissions giving rise to this lawsuit occurred in Miami-Dade County, Florida.

## PARTIES

6. Plaintiff is an adult who resides in Miami-Dade County, Florida. Plaintiff began working for VIP as a security agent and was misclassified as an independent contractor. Plaintiff worked for Defendants from 2017 through October 15, 2025. Plaintiff provided security services at one or more hotels operated by a national hotel chain with locations throughout the United States. In that role, Plaintiff performed security duties integral to the operation of hotels that regularly served out-of-state and international guests, hosted interstate travelers, and facilitated the lodging, movement, and safety of persons engaged in interstate commerce. Plaintiff regularly and directly engaged in interstate commerce within the meaning of the FLSA, 29 U.S.C. § 201 et seq., by protecting hotel guests, employees, and property involved in interstate commerce; monitoring and securing vehicles, luggage, packages, equipment, and other goods that had traveled in interstate commerce; and responding to incidents involving guests and vendors traveling from outside the State of Florida. Plaintiff’s work was essential to the uninterrupted operation of hotels that are themselves instrumentalities of interstate commerce.

7. Defendant, VIP, is a private security services company with its headquarters in Doral, Florida. VIP provides comprehensive security services to residential complexes, national and international businesses, and celebrities.

8. At all relevant times, VIP maintained and operated a website, accessible to customers and the public via the internet, through which VIP advertised, marketed, and offered its security services and communicated with clients and prospective clients located within and outside the State of Florida. Defendant's website is located at: https://vipsecurityfl.com/.

9. VIP also maintained active social media accounts and an online contact form associated with its website, which were used to promote its services, solicit business, communicate with clients, and receive service inquiries from individuals and entities located within and outside the State of Florida. These online activities further constituted VIP's participation in interstate commerce.

10. In addition to hotel assignments, VIP also provided private security services for high-profile individuals, including celebrities, entertainers, executives, and other VIP clients who traveled from outside the State of Florida and, in some instances, from foreign countries. Security agents employed by VIP were assigned to provide security coverage for such clients while they traveled, lodged, or appeared at venues in Florida. These assignments involved protecting persons engaged in interstate and international travel and facilitating the safe movement of individuals, property, and equipment across state and national borders. For example, VIP was contracted to provide security for Colombian singer, Maluma, when he attended the 2018 World Cup in Russia and they provided services for him in Russia. They also provided services for him throughout the US during his Tour.

11. At all relevant times, VIP was an enterprise engaged in interstate commerce and/or in the production of goods for interstate commerce within the meaning of 29 U.S.C. § 203(s). Upon information and belief, VIP employed two or more employees who were regularly engaged in commerce or in the handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce, including security equipment, uniforms, radios, vehicles, and electronic devices that originated outside the State of Florida.

12. Upon information and belief, Defendant had annual gross revenues of not less than $500,000 during the relevant time period. Accordingly, VIP was and is an enterprise subject to the requirements of the FLSA.

13. During Plaintiff's employment, Luis Belfort and Daniel Vainberg served as Plaintiff's supervisors and held themselves as owners of VIP.

14. Defendant, Luis Belfort, is VIP's manager and registered agent. As Plaintiff's supervisor, Mr. Belfort exercised control over the terms and conditions of Plaintiff's employment, including his misclassification as an independent contractor.

15. Defendant, Daniel Vainberg, is also a manager at VIP. As Plaintiff's supervisor, Mr. Vainberg exercised control over the terms and conditions of Plaintiff's employment, including his misclassification as an independent contractor.

## FACTUAL ALLEGATIONS

16. In 2017, Mr. Goilo began working for VIP as a security agent where he was classified as an independent contractor. At the beginning of his employment, he worked as a security guard at various nightclubs.

17. In or around 2019, Mr. Goilo was assigned to provide security services at an international hotel brand, that regularly engages in interstate commerce by serving out-of-state and

international guests, first working at Aloft Hotel in Brickell, then working at Hotel Indigo in Brickell and Aloft Hotel in Coral Gables.

18. At all times pertinent to this action, Defendants failed to comply with the FLSA because it intentionally misclassified Mr. Goilo as an independent contractor.

19. In that regard, Defendants exercised control over Plaintiff's hours, wages, and working conditions. Among other things, Defendants set Plaintiff's pay, schedule, and assigned his daily tasks. Accordingly, Plaintiff was required to clock in and out on an app called ezClocker, where his schedule was posted. Additionally, VIP supervised Plaintiff's work and provided Plaintiff instructions on how to do the job, including exercising control over Mr. Goilo's uniform by requiring he wear a shirt with VIP's logo and to wear a specific color shoe. Mr. Goilo performed essential functions of VIP's business and was a usual and customary part of it.

20. Defendants controlled the means and manner of Plaintiff's performance of work for Defendants, including but not limited to the following:

a. Assigning Mr. Goilo's work schedule and daily tasks;

b. Requiring Mr. Goilo to attend meetings in the office;

c. Requiring Mr. Goilo to clock in and out during each shift using ezClocker;

c. Requiring adherence to Defendants' rules and standards for performance of the job;

d. Requiring Mr. Goilo to wear a uniform with the logo of VIP;

e. Supervising, monitoring, and instructing Mr. Goilo's performance; and

f. Controlling and setting Mr. Goilo's pay.

21. Since October 26, 2022, Mr. Goilo was assigned to work the overnight 12-hour shift and regularly worked on average, fifty (50) to seventy (70) hours a week.

22. During this time, Mr. Goilo's hourly rate was set at $13.50. On September 30, 2025, Mr. Goilo's hourly rate changed to $14.00.

23. VIP paid Plaintiff on a weekly basis for the hours reported. Plaintiff received payment for the hours he worked at his regular hourly rate.

24. Plaintiff, however, consistently worked over 40 hours during a workweek, and Defendants did not pay Plaintiff half-time for the overtime hours worked.

25. In fact, during mandatory in-office meetings held for the security guards, Mr. Belfort acknowledged that the security guards should be paid overtime but suggested that since VIP was classifying them as independent contractors, it was presented as more beneficial to the employees.

26. In that regard, Plaintiff was intentionally misclassified as a contractor, and he was entitled to overtime compensation of a time and a half.

27. Thus, Plaintiff is entitled to over $20,000 in half-time compensation.

28. On October 15, 2025, Mr. Belfort terminated Plaintiff's employment.

29. Plaintiff filed this lawsuit on December 17, 2025. *See* ECF No. 1.

30. On December 19, 2025, Defendant VIP was served with the Complaint in this case. *See* ECF No. 4.

31. That same day, Mr. Belfort called Plaintiff several times and left a voicemail on his cellphone where he noted that he was upset that Plaintiff had filed a lawsuit against the Company and indicated that he was going to tell the management at the hotel where Plaintiff was previously assigned to pursue a lawsuit against him.

32. Mr. Belfort's actions were intended to chill Plaintiff's speech and to instill fear in him to prevent him from pursuing this lawsuit against the Company and him individually.

**COUNT I**
**UNPAID OVERTIME WAGES IN VIOLATION OF THE FLSA**

33. Plaintiff adopts and realleges all allegations contained in Paragraphs 1 through 32, as if fully set forth herein.

34. Plaintiff was employed with Defendants as a security agent from 2017 through October 15, 2025.

35. On average, during his employment with Defendants, Mr. Goilo worked between 50 and 70 hours a week and was misclassified as an independent contractor.

36. The FLSA, specifically 29 U.S.C. § 207, requires that employees receive compensation for all hours worked over 40 hours at a rate no less than a time and a half. At all relevant times, Defendants were the employer and Plaintiff was an employee within the meaning of the FLSA. Through their direct and routine provision of security services for a national hotel chain and related operations that involved interstate travel, interstate guests, interstate communications, and commercial transactions across state lines, Defendants engaged in interstate commerce within the meaning of the FLSA.

37. During the time Plaintiff was employed with Defendants, Defendants paid Plaintiff for all straight hours worked. However, Defendants failed to pay the required half-time hours from December 17, 2022[1], to October 15, 2025. Thus, Defendants intentionally failed to comply with the FLSA and its regulations.

38. As a result of the Defendants' acts as described above, Plaintiff was not properly compensated pursuant to the law.

---

[1] Although the improper payments go back further, Plaintiff is limiting his claim to three-years prior to the filing of this Complaint.

39. Defendants' failure to pay FLSA-required overtime was willful within the meaning of the FLSA.

40. Defendants knew and/or showed reckless disregard of the provisions of the FLSA concerning the unpaid overtime wages to Plaintiff in accordance with the FLSA. In fact, Mr. Belfort communicated this to the security guards during their mandatory meetings.

41. By reason of the said intentional, willful, and unlawful acts of Defendants, Plaintiff has suffered damages (as described above) plus incurring costs and reasonable attorneys' fees and is entitled to damages as provided by Section 216 of the FLSA.

42. As a result of the Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages.

WHEREFORE, Plaintiff demands judgment against Defendants for payment of all of his half-time hours worked, reimbursement for all of his work-related costs and expenses, liquidated damages, reasonable attorney's fees and costs of suit, injunctive and declaratory relief, and for all other relief allowed by §216(b) of the FLSA.

**COUNT II**
**POST-EMPLOYMENT RETALIATION VIOLATION OF THE FLSA**
**AGAINST VIP and BELFORT**

43. Plaintiff adopts and realleges all allegations contained in Paragraphs 1 through 32, as if fully set forth herein.

44. Plaintiff engaged in protected activity under the FLSA when he filed the underlying lawsuit on December 17, 2025.

45. The Complaint was served on December 19, 2025 and, that same day, Mr. Belfort called Plaintiff to threaten him for having filed this lawsuit.

46. Mr. Belfort was acting an agent of VIP when he called Plaintiff.

47. Mr. Belfort's actions were intended to chill Plaintiff's willingness to enforce his rights under the FLSA.

48. Reasonable workers, including the other employees who are similarly not being paid their overtime wages, would naturally be dissuaded from continuing to support an FLSA claim when faced with the retaliatory conduct VIP, through Mr. Belfort, has engaged in.

49. Plaintiff has suffered mental and emotional distress because of VIP's retaliatory conduct.

WHEREFORE, Plaintiff requests the Court:

(a) Enter judgement for Plaintiff and against VIP and Mr. Belfort;

(b) Award Plaintiff actual damages for the unpaid wages;

(c) Award Plaintiff liquidated damages;

(d) Award Plaintiff compensatory damages for mental and emotional distriess;

(e) Award Plaintiff his attorney's fees and costs;

(f) Award Plaintiff all recoverable interest; and

(g) Award any other relief this Court deems just and proper.

JURY TRIAL DEMAND

Plaintiff demands trial by jury.

Date: February 2, 2026

Respectfully submitted,

*/s/Suhaill M. Morales*

Suhaill M. Morales, Esq.
Florida Bar No. 84448
SMM Law P.A.
7900 NW 155 St., Suite 203
Miami Lakes, FL 33016
305-518-7026
Smorales@smmlawfirm.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that a true and correct copy of the foregoing document was served via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing on all counsel or parties of record.

*/s/Suhaill M. Morales*
Suhaill M. Morales